STATE OF IOWA, Appellee, v. REGINALD S. TRACY, Appellant.

No. 42952.

JUNE 21, 1935.

Bronson & Ellis, and Don Barnes, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, First Assistant Attorney-general, Harlan J. Williamson, County Attorney, and Melvin J. Yoran, Special Assistant County Attorney, for appellee.

KINTZINGER, J.—The defendant, à married man, 53 years of age, was charged with the murder of his wife on the 3d day of October, 1934.

On the 18th day of October, 1934, the defendant, after having been duly arraigned and being present in court and represented by counsel, entered a plea of guilty as charged. Thereupon, the court, in compliance with section 12913 of the Code, fixed Tuesday, October 23, 1934, as the time for the hearing of evidence before imposing sentence. After hearing the evidence, the court, on October 25, 1934, determined that the defendant was guilty of murder in the first degree, entered judgment upon his plea of guilt, and sentenced him to death as provided by law. From the judgment defendant appeals. The evidence submitted to the court disclosed substantially the following facts: ·

Defendant and the deceased were man and wife, and had been married and lived together a number of years until Mrs. Tracy was shot to death on October 3, 1934. About two years prior to the shooting, defendant met and became enamored with a Mrs. Flossie Fear, a married woman of loose character. For about a year prior to the shooting he and Mrs. Fear had frequent meetings, and during that time planned the death of Mrs. Tracy. In January, 1934, they had arranged to kill her by means of a faked automobile accident, which failed. Soon afterwards another attempt to kill her was made by pushing an automobile in which she was riding over a bluff. This also failed, because the car caught on the edge of a bluff and failed to go over. Later they again planned her death, but this plan also failed. Finally in September, 1934, the defendant and Mrs. Fear completed arrangements to hire a man to fake a holdup and kill Mrs. Tracy while Mr. and Mrs. Tracy were returning to Manchester in their automobile. The man hired to do the killing was to receive $1,000, $200 of which was to be paid in advance. Tracy gave Mrs. Fear $200 to make the advance payment. Pursuant to the plan agreed on, this party held up the Tracy car on October 3, 1934, shot Mrs. Tracy in the back, and struck Mr. Tracy over the

head with a revolver to give the appearance of a holdup. Mrs. Tracy died within an hour as a result of the shooting.

The evidence also shows that up until the time Mr. Tracy became involved with Mrs. Fear he had been a man of good moral character. One of his character witnesses was Dr. B. H. Byers, a physician, of Manchester, Iowa. He testified that he had known defendant for over twenty years, and that during all of that time he had been a man of good moral character. Other witnesses testified to the same effect, but not one of them, including the doctor, said they ever noticed that defendant was afflicted with any mental disturbances. Mrs. Flossie Fear, with whom the defendant planned the death of his wife, was also charged with the crime of murder, and also entered a plea of guilty. After hearing the evidence, the court determined and found that the defendant and Flossie Fear were each guilty of murder in the first degree.

Thereafter, on October 25, 1934, the court entered judgment in the case against the defendant, Tracy, sentencing him to be hanged according to law. The judgment entered against Mrs. Fear was that she be imprisoned in the state penitentiary for life.

On October 25, 1934, the defendant Tracy appeared in court with his counsel, and at that time the court entered the judgment imposing sentence of death. Thereafter, on October 27, 1934, the defendant filed exceptions to the sentence, filed a motion to set it aside, and filed an application to produce additional and newly discovered evidence in mitigation and reduction of the sentence imposed.

As grounds for these applications, defendant offered to show that, before pleading guilty, his attorney had consulted one or more doctors with reference to the defendant's mental and physical condition, and was advised by such doctors that they could not help the defendant, and that he ought to plead guilty; that after the sentence was imposed, they expressed surprise at the extreme penalty imposed, and told defendant's counsel he should not have received more than a life sentence because of his mental condition resulting from prostatic trouble; that, because of the severe penalty imposed, they would testify that he was suffering from prostatic trouble, which affected him mentally to such an extent as to make him irresponsible for the crime committed. The defendant's counsel offered to make this showing by affidavit of medical experts. The court accepted the professional statement of defendant's attorney

in lieu of affidavits, and gave it the same consideration and effect as if so made.

The state resisted these applications by a countershowing that the defendant and his attorney, prior to the arraignment and plea of guilty, had knowledge of the prostatic trouble complained of; that a few days prior to the arraignment there was a conference between counsel on both sides with reference to defendant's entering a plea; that at that time defendant's counsel expressed a desire to have defendant examined before entering his plea, and the case was then postponed until October 18, 1934, to enable defendant to make any arrangements he saw fit. The state's resistance also shows that before the plea was entered, Dr. Stewart, of Independence, and Dr. Jones, of Manchester, made an examination of defendant at his counsel's request. On October 18, 1934, and after the examination was made, defendant appeared in court with his counsel, and pleaded guilty to the crime charged.

I. Appellant claims the court erred in not granting a new trial for the purpose of receiving evidence of defendant's mental condition. Section 13905 of the Code provides that:

"If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question."

The question of defendant's insanity was never raised during the trial. It is now claimed that, if a new trial is granted, the defendant would be able to show that he was mentally incompetent to commit the crime charged. This request was not made until after the trial was finished and judgment had been entered. The statutes permitting a suspension of the trial for an examination of a defendant's sanity contain no provisions for a suspension of proceeding *after conviction*, except in prosecution for misdemeanors. Code, section 13909. It is our conclusion that, in order to suspend proceedings in a criminal prosecution for murder, the question of insanity must be raised before the end of the trial. State v. Cooper, 169 Iowa 571, 151 N. W. 835.

If the motion to set aside the judgment be considered in the nature of an application to withdraw the plea of guilt, it may be said that the rule is well settled that a plea of guilty cannot be withdrawn after judgment has been entered. State v. Harper, 220 Iowa ......, 258 N. W. 886, loc. cit. 891.

██  Nor do we find the offer of any newly discovered evidence that was not available to the defendant before the judgment on the plea of guilty was entered. Under such circumstances it is not a ground for a new trial. State v. King, 97 Iowa 440, 66 N. W. 735. It is also the well-settled rule of law in this state that newly discovered evidence is not a statutory ground for a new trial in a criminal case. State v. Dimmitt, 88 Iowa 551, 55 N. W. 531; State v. Harris, 97 Iowa 407, 66 N. W. 728; State v. King, 97 Iowa 440, 66 N. W. 735; State v. Cater, 100 Iowa 501, 69 N. W. 880; State v. Watson, 102 Iowa 651, 72 N. W. 283; State v. Pell, 140 Iowa 655, 119 N. W. 154; State v. Pavey, 193 Iowa 985, loc. cit. 991, 188 N. W. 593.

██  II.  Appellant also claims that the court erred in entering the extreme penalty, instead of imposing sentence for life, and that this court should reduce the sentence to that of life imprisonment. The entering of a judgment on a plea of guilty and the imposing of a sentence thereunder in this kind of an action are peculiarly within the discretion of the trial court. This court cannot interfere with that discretion, unless it clearly appears that it has been abused. State v. Freeman, 27 Iowa 333; State v. Allen, 32 Iowa 248; State v. Wilmoth, 63 Iowa 380, 19 N. W. 249; State v. Pavey, 193 Iowa 985, 188 N. W. 593; State v. Olander, 193 Iowa 1379, 186 N. W. 53, 29 A. L. R. 306; State v. Griffin, 218 Iowa 1301, 254 N. W. 841.

After the plea of guilty was entered, the court heard evidence for the purpose of determining the degree of guilt, and the penalty to be inflicted, as required by section 12913 of the Code. His guilt of homicide was fixed by his own plea of guilty. From the evidence it appears that, notwithstanding his previous good character, the defendant, during the last two years prior to his wife's death, carried on illicit relations with his codefendant, Mrs. Flossie Fear. During the last year prior to the killing he and Mrs. Fear coolly and deliberately planned the death of Mrs. Tracy, which was finally accomplished after several unsuccessful attempts.

██  Appellant offered to show that he was suffering from a physical disability which rendered him mentally incompetent to commit the offense charged. This showing, however, was met by resistance on the part of the state, under which it is shown without dispute that the defendant and his counsel knew of the physical ailment suggested, for some time before the plea was entered. During this time defendant's physical condition was under discussion be-

tween counsel for the state and counsel for the defendant. The time for entering a plea was delayed for the very purpose of enabling defendant's counsel to secure a medical examination of defendant, which was done. It also appears that defendant's counsel was advised by one of his physicians that his testimony would not help the defendant, and that he ought to get a life sentence. After the death sentence was imposed, the defendant's physician expressed surprise at the extreme penalty, and then said they would testify that on account of his mental condition he should not have received more than life. In its ruling on the motion to set aside or reduce the penalty, the lower court said:

"According to the statement, (the showing made), Dr. Ladd is of the opinion that the defendant Tracy was sufficiently * * * responsible mentally to take a life sentence for his participation in the murder, but * * * is not of such mental condition as to deserve more than a life sentence. * * * if he is sufficiently accountable to deserve a life sentence, he might equally be sufficiently responsible mentally to have the extreme penalty imposed. * * * The statement of Dr. Ladd that * * * the death penalty should not have been imposed because of his mental condition, would be answered by his own statement that he should have a life sentence and deserve it. * * * Nothing that is offered to be shown here could possibly change the judgment of this court. *The plea of insanity has not been interposed at any time.* * * * When evidence was taken, Dr. Ladd was subject to a subpoena and it was known for a number of days before that that he had treated this defendant for prostate trouble, and it seems to me that due diligence would have disclosed that it might be a factor in this case. I cannot conceive it possible that a statement from physicians who believed that this man was mentally responsible to the extent of taking a life sentence is not responsible for taking the other penalty."

It is the settled rule of law in this state that the judgment of the lower court will not be set aside unless there was a clear abuse of its discretion on the part of the lower court. State v. Freeman, 27 Iowa 333; State v. Allen, 32 Iowa 248; State v. Wilmoth, 63 Iowa 380, 19 N. W. 249; State v. Meloney, 79 Iowa 413, 44 N. W. 693; State v. Smith, 127 Iowa 528, 103 N. W. 769; State v. Pavey, 193 Iowa 985, 188 N. W. 593; State v. Olander, 193 Iowa 1379, 1382, 186 N. W. 53, 29 A. L. R. 306; State v. Griffin, 218 Iowa

1301, 254 N. W. 841; State v. Brewer, 218 Iowa 1287, 254 N. W. 834.

In State v. Smith, 127 Iowa 528, 103 N. W. 769, this court said:

"There is no doubt whatever of the defendant's guilt. Indeed, his counsel distinctly assert that there was no legal justification or excuse for his act. But they do contend that the punishment should have been life imprisonment instead of death. No error was committed by the trial court, unless it be found that it abused its discretion in fixing the penalty. * * * Manifestly, a large discretion is vested in the trial court in such cases, and we should not interfere in the absence of a showing of abuse of that discretion. The case comes to us for correction of errors, and not that we may exercise the pardoning power. Commutation of sentence does not belong to this department of the government."

In State v. Olander, 193 Iowa 1379, 186 N. W. 53, this court, speaking through Justice Evans, said:

"I cannot agree that our appellate power is a power of pardon or commutation. The pardoning power is an executive one, and is distinctly conferred upon the chief executive. To this extent we agree. If conferred upon the chief executive, why should it be conferred upon this court? Our function is judicial. It is ours to determine the guilt or innocence of the defendant, and, if he is guilty, to apply the penal statutes in such case provided. We have no function of executive mercy. Unless upon this record we can differentiate the offense therein disclosed from one of extreme guilt, and can find in the record mitigating reasons why the extreme penalty should not in this case be imposed, then we are without authority to interfere * * * with the judgment of the trial court. I am not willing to array mere judicial power to the nullification of the statutory penalty, terrible as it is. To do so would not only encroach upon the legislative prerogative; it would give to the future assassin a sense of security, already and long too great and comfortable. I think the statutory sword of Damocles above his head should be hung by a more slender thread, and that the terror thereof should be increased rather than lightened. While we have pondered upon this record, as it is meet that we should do, murder has stalked like a hunter unafraid within the domain of our jurisdiction, leaving its red trail of dead men and ravished women. If there be any means discoverable by human wisdom whereby murder contemplated

may be deterred by the punishment of murder done, such, wisdom must find its expression by legislation. It is not a function of the judiciary to veto it. With a due sense therefore of the solemnity of our responsibility in this case, I would let the statutory penalty fall."

In State v. Griffin, 218 Iowa 1301, loc. cit. 1312, 254 N. W. 841, 847, we said:

"Neither the direction of the jury nor the judgment of the district court can be set aside by us unless error was committed below. After a very careful and complete review of the record, we are unable to discover any error. * * * The state, through its legislature, has prescribed the punishment for such a crime. It is a prerogative of the state to preserve itself and its institutions, and protect human life by thus prescribing the penalty for that crime."

So in this case we cannot reverse except for errors committed by the trial court. We can discover no error in the record unless it be for an abuse of discretion in imposing the death penalty. We are conscious of the importance of this action, and have given it our deep and serious consideration. While we realize the enormity of the punishment inflicted, we are also conscious of the gravity of the offense committed. The penalty for a conviction of murder in the first degree is either life imprisonment or death. In this action it was within the province of the trial court to impose either. After hearing the evidence, the court imposed the maximum penalty, and its judgment cannot be set aside except for error committed or for a clear abuse of the court's discretion in imposing the maximum penalty. The defendant was arraigned and pleaded guilty. Until this plea was entered, and until after judgment was rendered thereon, not a single error appears. in the record. The only reason that can be urged for setting aside or reducing the sentence is an abuse of the court's discretion. If it does not clearly appear that its discretion was abused, this court should not disturb the judgment. The penalty for the commission of murder in the first degree has been fixed. by the legislature. It is not our duty to legislate, neither have we the power of clemency invested in the chief executive. After a defendant is found guilty of murder in the first degree, we should let the statutory penalty fall. The trial court, under the plea of guilty entered, was required to fix the sentence. This was done, and the sentence imposed as prescribed by the legislature.

The record in this case reveals a cool, calculated, and premeditated killing of defendant's wife with malice aforethought. The defendant was not actuated by any sudden emotion, impulse of passion, or anger aroused by physical combat. The crime was deliberately planned by the defendant and his paramour for a whole year prior to the killing. When the defendant took his marriage vows, he assumed a binding obligation to protect his wife so far as it was within his power so to do. In the deliberate killing of his own wife as disclosed by the evidence in this case, the defendant violated both the laws of God and of man. We have given this case careful and conscientious consideration. It is not seriously contended that this appeal is anything more than an application for a reduction of the sentence. We are abidingly convinced that the lower court was deeply conscious of its duty in imposing the sentence entered and did not abuse its discretion.

We do not hold that this court cannot interfere with a sentence pronounced in all cases, but we do hold that under the record in this case we are not justified in disturbing the judgment of the lower court. For the reasons hereinabove set out, we are constrained to hold that the judgment of the lower court is right, and it is therefore hereby affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, DONEGAN, HAMILTON, PARSONS, and POWERS, JJ., concur.