STATE OF IOWA, appellee, v. CHARLES KELLEY, appellant.

No. 50517.

MAY 8, 1962.

REHEARING DENIED JULY 23, 1962.

Robert C. Heithoff and James A. Pratt, both of Council Bluffs, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Peter J. Peters, Pottawattamie County Attorney, and Ross F. Caniglia and George J. Knoke, Assistant County Attorneys, for appellee.

THORNTON, J.—Defendant, Charles Kelley, was indicted by the Grand Jury of Pottawattamie County on March 14, 1961. In the indictment he was charged with murder in that county in that on or about February 22, 1961, he, "Did, with malice aforethought kill a human being, namely, Alvin E. Koehrsen, in violation of section 690.1, Code of Iowa, 1958." The indictment was amended to read, "Did, with malice aforethought, while attempting to perpetrate a robbery, kill a human being, namely, Alvin E. Koehrsen; * * *."

Defendant pleaded not guilty. A change of venue to Mills County was granted defendant. The case was tried to a jury, commencing May 8, 1961. This trial was concluded on May 16, 1961. The jury failed to return a verdict. On May 18, 1961, the court minutes of the trial court show defendant appeared with his counsel. Counsel for the State was present. At the request of his counsel the defendant took the stand and was questioned by his counsel. He and his counsel were called before the bench and questioned by the court.

In answer to questions propounded by both his counsel and the court, "* * * he stated that he had been fully advised and

had counseled with his attorney and that he now wished to withdraw his plea of not guilty and enter a plea of guilty to the crime of first-degree murder as provided by the 1958 Code of Iowa as amended. Such plea of guilty to the said crime of murder in the first degree was then entered in open court and the court now orders that May the 25th at the hour of ten o'clock A.M. in the Mills County Courthouse hearing is fixed so that the court may fix the punishment herein as provided by law. * * *."

The court minutes for May 25 open with this statement:

"Court convened at ten o'clock A.M. pursuant to an order made on May 18, 1961, for the purpose of permitting the State of Iowa and the defendant to make showing and introduce evidence as either might deem proper for assisting the court in determining the punishment and the degree of murder to be adjudged against the defendant."

Defendant and his counsel were present. The court again inquired of the defendant if he realized and understood the import of his plea of guilty to the charge of first-degree murder. He replied he did and had been fully advised by his counsel as to applicable law. Opening statements were made and evidence taken. The record shows defendant offered evidence from 2:15 p.m. to 2:45 p.m. and from 3:05 p.m. to 3:08 p.m. Arguments were made for the defendant and the State, concluding at 3:20 p.m. The court fixed June 7 at 11 a.m. for the pronouncement of judgment and sentence.

At this hearing held May 25, 1961, counsel for the State and defendant stipulated the evidence heard in the trial before the jury previously heard by the same trial judge "would be the same if it were resubmitted" and "it is agreed by the parties hereto that the court shall consider all of that testimony as if it were and had been resubmitted to the court." This stipulation included all exhibits introduced in the jury trial. All objections to evidence including exhibits made by defendant in the jury trial were again interposed and overruled by the court. Additional exhibits were offered and admitted over defendant's objection in the May 25 hearing.

The judgment entry of June 7, 1961, shows the case was called, defendant and his counsel were present, and contains the

following: "* * *, and the court having now fully investigated and considered all the evidence, facts and circumstances as shown by the record in this case, and after exhaustive study, now finds that the defendant Charles Kelley is guilty of the crime of murder in the first degree, * * *."

The defendant was informed of the charge against him, of his guilty plea, and inquiry was made by the court if there was any reason why judgment and sentence should not now be pronounced and none was stated. Judgment and sentence were entered imposing the death penalty.

The defendant urges six errors for reversal. Two of them are related and will be considered together. They are, the court erred in failing to determine the degree of murder by the examination of witnesses, and erred in considering the appellant's plea of guilty as a plea of guilty in the first degree.

I.  Neither the defendant nor his counsel took any exceptions or objections in the trial court to the entry of the plea as shown by the court minutes nor to the procedures in the trial court except his objections to evidence which will be discussed later. We are asked to, and do apply section 793.18, Code of Iowa, 1958, which provides:

"If the appeal is taken by the defendant, the supreme court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it."

The duty placed on this court by section 793.18 is to decide criminal appeals according to the very justice of the case as shown by the record without regard for technical errors. State v. Martin, 243 Iowa 1323, 1327, 55 N.W.2d 258, 34 A. L. R.2d 904, and citations. It requires us to enter such judgment as the law demands. State v. Nutter, 248 Iowa 772, 779, 81 N.W.2d 20, 24. And we are not to consider mere technical errors which do not affect the result. State v. Jensen, 245 Iowa 1363, 66 N.W.2d 480; and State v. Neuhart, 228 Iowa 1055, 292 N.W. 791.

■ ■ II. Defendant contends the words "first degree" included in his plea of guilty must be regarded as surplusage. We agree. In State v. Martin, supra, we held the addition of the words "in the first degree" was surplusage only. The indictment in Martin contained allegations while in the perpetration or attempt to perpetrate a rape or robbery contrary to section 690.2. The import assigned to the indictment there was the same as alleging A. B. murdered C. D. under the short form indictment act, section 773.34, Code of Iowa, 1958, as any other construction would nullify the provisions of section 690.4, Code of Iowa, 1958, providing for the ascertainment of the degree of murder. It is there pointed out there is under our law but one crime of murder and the degrees do not constitute distinct crimes, but gradations of the same crime devised to permit punishment according to the circumstances. State v. Phillips, 118 Iowa 660, 92 N.W. 876. When we consider section 777.12, Code of Iowa, 1958, providing the plea of guilty can only be made in open court and by the defendant himself, in substantially the following form: "'The defendant pleads that he is guilty of the offense charged in the indictment'", it follows the plea admits only the necessary allegations in the indictment and unnecessary words in the plea are surplusage the same as unnecessary words in the indictment.

III. It therefore follows the trial court was required to treat the plea as simply a plea of guilty to murder and hold a hearing to determine the degree as provided in section 690.4, Code of Iowa, 1958. It is there provided, "* * *; but if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree, * * *."

■ The question here is, was this done? The record shows by stipulation of the parties the trial court was to consider all of the evidence produced by either party in the trial before the jury as well as whatever evidence either the defense or the State wished to offer. Defendant does not complain any offer of evidence on his behalf was refused or he was in any way limited in presenting evidence bearing on the question of the degree of murder. The fact the trial court by stipulation considered evidence previously heard by it in the jury trial does not constitute a failure to determine the degree by the examination of witnesses.

This is particularly true here where it was stipulated the evidence would be the same. Nor does it appear defendant's right to cross-examine the State's witnesses was in any manner curtailed. The court heard and considered all of the evidence that would have been produced if the witnesses had been called to testify in the hearing held May 25, 1961. Under the circumstances defendant's rights under section 690.4, Code of Iowa, 1958, were fully protected.

In an early case, M'Cauley v. United States, 1 (Morris) Iowa 641, 642, 643, our predecessor, the Supreme Court of Iowa Territory, in considering a statute similar to section 690.4, Code of Iowa, 1958, was faced with a similar situation.

The statute then provided: "* * * and if such prisoner be convicted by confession in open court, the court shall proceed by examination of witnesses in open court to determine the degree of the crime, and shall pronounce sentence accordingly."

The defendant there withdrew his plea of not guilty after the prosecution had presented its case to the jury, and pleaded guilty to the crime charged, and was thereupon sentenced to be hanged. The record did not show witnesses were examined after the guilty plea, or that the court in any manner determined the degree of the crime as contemplated by the statute.

The court said: "* * * but an inquiry and decision as to the more precise nature of the offense are rendered necessary. That inquiry and decision should appear of record. The record shows that before the plea of not guilty had been withdrawn, the testimony in chief, on the part of the prosecution, had all been presented. We see no valid objection, therefore, on the ground that the court did not hear testimony to enable it to decide on the precise nature of the offense, * * *."

The case was reversed because the court's conclusions did not appear of record.

Similar holdings are found in State v. Grattan, 222 Iowa 172, 268 N.W. 489; State v. Ferranto, 112 Ohio St. 667, 148 N.E. 362; State ex rel. Christopher v. Amrine, 75 N.E.2d 227, 230 (Ohio Com. Pl. 1947); and annotation, 34 A. L. R.2d 929.

IV.  How the trial court treated the plea can only be determined from the record. On May 18, 1961, when the plea was

entered it appeared like a plea to first-degree murder and the court then set a hearing for May 25, "so that the court may fix the punishment herein as provided by law." The court minutes for May 25 state, court was convened "for the purpose of permitting the State of Iowa and the defendant to make showing and introduce evidence as either might deem proper for assisting the court in determining the punishment and degree of murder to be adjudged against the defendant." Though the court did inquire of the defendant again if he fully understood the import of his plea of guilty to a charge of first-degree murder, it does not appear the court considered the question closed as to the degree, but rather that the court was giving the defendant every opportunity to understand the effect of his plea and that the purpose of the hearing was twofold, to determine the degree, and fix punishment. Here again, defendant does not claim now any witness of his was not heard. If such a right had been denied our course would be clear. If the court was considering the plea solely as a plea of guilty to first-degree murder there would be no reason to state the purpose as including "for assisting the court in determining * * * the degree of murder * * *." The court minutes for June 7 show clearly the court considered all the evidence and did in fact determine the degree of murder. We find no merit in defendant's contention the court considered the plea of guilty as a plea of guilty to first-degree murder and not as including second-degree murder and manslaughter if the evidence would so warrant. The record affirmatively shows the court fully performed the duty to determine the degree of murder as required by section 690.4, Code of Iowa, 1958.

Defendant argues that penal statutes are strictly construed. We agree. But we do not agree something required by statute has not been done, when the record before us shows it has. There is no question of the duty placed on the trial court, and there is no question but this duty was performed. All of the evidence either the defendant or the State wished to offer was before the court. The court made a finding based on and substantiated by such evidence. We do not for a moment overlook the solemn duty cast on us in a case of this kind, but we cannot reverse a case where a defendant has been accorded his full rights, no more

than we can affirm where he has not. Our duty is not to the defendant alone, but the State of Iowa as well. Defendant vigorously urges State v. Martin, supra, requires a contrary result here. It should be pointed out, in Martin the defendant was accorded no hearing, here the defendant had a full and complete hearing.

■ V. Defendant contends the evidence is insufficient to sustain the finding of first-degree murder. He argues specifically there is no evidence of premeditation and intent to kill. The record does show this defendant with two companions, Charles Brown (see State v. Brown, 253 Iowa 658, 113 N.W.2d 286), and a girl friend of Brown, came to Council Bluffs from Omaha on February 22, 1961, in a cab. The men left the girl at a tavern. Defendant and Brown, both armed, defendant with a .32-caliber revolver, and Brown with a .38, asked the deceased, Alvin E. Koehrsen, for a lift for a few blocks. After they were in the car they directed the deceased where to go and when to stop. While the car was stopped the deceased tried to get out of the car and the defendant shot him. At the scene of the crime a Mr. Leroy R. Harmon testified he was within 50 feet of the car, he heard three sharp reports, he heard a groan and saw the deceased slump to the ground. He saw defendant get out of the car and walk past him. At the scene of the crime the deceased told a police officer both men shot him. He had been shot seven times, once in the left cheek, once through the neck, once in the right wrist, and four times in the left side of the rib cage. The defendant himself says, "I do not know how many times I fired * * *." The defendant's statement also shows Brown and defendant were in the process of stealing the deceased's car and neither of them could start it. Defendant had pulled his gun on the deceased while telling him where to go. This evidence is not contradicted in any way in the record. It constitutes substantial evidence of malice, deliberation, premeditation and intent to kill, as well as substantial evidence defendant killed deceased while engaged in the perpetration of a robbery.

■ Premeditation and deliberation need not exist for any particular length of time previous to the killing. Use of a deadly weapon with opportunity to deliberate is evidence of malice,

deliberation, premeditation and intent to kill. State v. Brown, 253 Iowa 658, 664, 113 N.W.2d 286, 290, and citations; State v. Jackson, 251 Iowa 537, 545, 101 N.W.2d 731, 736; State v. Nutter, 248 Iowa 772, 81 N.W.2d 20; and State v. Leedom, 247 Iowa 911, 76 N.W.2d 773. Certainly when a man repeatedly fires a .32-caliber revolver at another within the short range of the width of an automobile he cannot be heard to say he did not intend the natural and obvious consequences of such act. As stated in State v. Jackson, supra, at page 545 of 251 Iowa, page 736 of 101 N.W.2d:

"He who goes armed with a deadly weapon, such as a loaded revolver, for the purpose of committing a robbery, and uses it in the course of the robbery, is not in a strong position to urge that there was no evidence of deliberation or premeditation."

The evidence supports the trial court's finding.

VI. Defendant urges the trial court was in error in admitting the testimony of Kenneth Earl Vencel at the hearing to determine the degree of murder and the punishment, because it showed an offense independent of the one with which he was charged. Mr. Vencel's car and his money were taken from him by defendant and Brown. He was shot by the defendant when they were standing two feet apart. He was able to run away, as he ran he was hit by two more shots in the back. More shots were fired. Miraculously Mr. Vencel was able to run away, and lived. This happened about 8:20 or 8:30 p.m., February 22, 1961. Mr. Harmon, the witness first on the scene when the deceased, Mr. Koehrsen, was shot, placed the time at about 8:10 p.m. Defendant's confession or statement, discussed later, shows Brown and defendant came to Council Bluffs for the purpose of stealing a car. The testimony of Mr. Harmon and Mr. Vencel shows that within a half-hour's time defendant murdered Mr. Koehrsen in an attempt to steal his automobile, abandoned the attempt because neither he nor Brown could start the car, and then stole Mr. Vencel's car and while so doing shot him. Certainly the acts of stealing Mr. Vencel's car and shooting him are so closely related in time and place and so intimately associated with attempting to steal Mr. Koehrsen's car and murdering him that they form a continuous transaction—in this in-

stance, of stealing a car at all cost. We have repeatedly held such evidence is admissible to show the whole transaction, what immediately preceded and what immediately followed the act complained of, for the purpose of showing the scienter or quo animo of the party charged. State v. Brown, 253 Iowa 658, 668, 113 N.W.2d 286, 292; and State v. Holoubek, 246 Iowa 109, 113, 66 N.W.2d 861, 863, and citations.

In this hearing to determine the degree of murder, defendant's guilt or innocence of the crime of murder was not in issue, it was the degree of murder. The state of mind of defendant is an element to be determined on such an inquiry. Mr. Vencel's testimony was material and relevant to that issue and was properly admitted. State v. Schlak, 253 Iowa 113, 116, 111 N.W.2d 289, 291; State v. Linzmeyer, 248 Iowa 31, 79 N.W.2d 206; and State v. Triplett, 248 Iowa 339, 79 N.W.2d 391.

VII. It is defendant's thought that his confession and statements to the officers regarding the crime charged, the circumstances and shooting of Mr. Vencel and another shooting in Omaha, were inadmissible on the issue of the degree of guilt and the punishment to be inflicted because defendant was a minor, 20 years old at the time. This is the only reason urged. He concedes there are no Iowa cases so holding. He cites two Oklahoma cases, Olivera v. State, 354 P.2d 792 (Okla. Cr. 1960), and Clark v. State, 95 Okla. Cr. 375, 246 P.2d 422. We have examined these two cases thoroughly. In Olivera the confessions of two defendants, 17 and 18 years old, were under consideration. In Clark the defendant was 17 years old. In neither case were the convictions reversed. In each of these cases there are statements that may be thought to sustain defendant's position, however, as we read them the fact the defendants were minors was considered as only one indicium the confessions were involuntary. In Olivera, at page 794 of 354 P.2d, is this statement: "We are of the opinion that this fact [minority] standing alone is not sufficient to void a confession when the same is validly made under the law." This view does not differ from ours. There is no evidence in the record that defendant did not know the statements and confession made by him could be used against him, or that he did not know he had a right to remain silent. This

is not presumed. On the contrary, a confession is presumed to be voluntary. State v. Jones, 253 Iowa 829, 113 N.W.2d 303, and citations; State v. Brandt, 242 Iowa 382, 44 N.W.2d 690; and 23 C. J. S., Criminal Law, section 829, page 230. It should be pointed out, defendant had entered a plea of guilty. On the issues to be determined it was proper to consider what defendant himself said.

VIII. Defendant asks us to reduce the sentence of death to life imprisonment. He urges us to reconsider our position on the power granted this court by section 793.18, Code of Iowa, 1958. In effect he asks us to exercise the pardoning power and commute the sentence. That we do not have such power is the long standing holding of this court. We have not reduced a death sentence to life imprisonment where the same was assessed upon a plea of guilty to murder and after a hearing to determine the degree of murder and to fix the punishment. This is a court for the correction of errors. We would be justified in setting aside or reducing the sentence in this case only if there is a clear showing of an abuse of the trial court's discretion in imposing the maximum penalty. State v. Nutter, 248 Iowa 772, 81 N.W.2d 20; State v. Smith, 127 Iowa 528, 103 N.W. 769; State v. Hunter, 243 Iowa 361, 51 N.W.2d 409; State v. Bruntlett, 240 Iowa 338, 36 N.W.2d 450; State v. Wheaton, 223 Iowa 759, 273 N.W. 851; State v. Grattan, 222 Iowa 172, 268 N.W. 489; State v. Harper, 220 Iowa 515, 258 N.W. 886; State v. Tracy, 219 Iowa 1412, 261 N.W. 527; and State v. Olander, 193 Iowa 1379, 186 N.W. 53, 29 A. L. R. 306.

Defendant has offered much evidence bearing on his unfavorable past life. There is evidence he suffered from epilepsy and some that such diagnosis had not been confirmed. In a letter solicited by able counsel for defendant, written by Dr. Richard W. Anderson, M.D., Director, Adult Psychiatry Outpatient Clinic, The Medical School, University of Minnesota, we find, after a long history of the defendant, this conclusion, "* * * nor is there any evidence of a psychotic reaction which would indicate that Mr. Kelly [Kelley] is not responsible for his acts."

The following statement from State v. Nutter, at page 780 of 248 Iowa, at page 24 of 81 N.W.2d, is appropriate here:

"In the instant case appellant did not make or claim any reason or justification for the killing. It was ruthless and vicious. There is no doubt about his being guilty of murder in the first degree as such has been defined by the legislature and construed by this court. The legislature has provided a choice of two penalties. The penalty imposed is one of those two. It was within the discretion of the trial court and so intended by the legislature. In the exercise thereof, we find no abuse of that discretion.

"Much of the record is devoted to evidence of appellant's early life and his conceded mental complex. No claim is made that he is insane such as to excuse the act. These matters do not entitle appellant to relief at our hands."

IX. When there is a division among the members of this court as to the proper determination of a case based upon a difference of opinion as to applicable rules of law, or as to fact situations giving rise to the application of rules of law, we are of the opinion it is unnecessary for the majority opinion to reply or to call attention to matters appearing in the dissent. However, in view of the dissent we may say we have considered the entire record of this case as submitted and just what was submitted. The defendant elected to proceed here upon a printed record and brief and argument as in a civil case. Section 793.17, Code of Iowa, 1958; and Court Rule 16. As stated, the evidence taken before the jury was by stipulation of counsel for the State and the defense to be considered by the trial court on the hearing to determine the degree of guilt and to fix the punishment. This stipulation appears in the printed record by the State's amendment thereto at pages 12, 13 and 14 of Appellee's Denial of and Amendment to Appellant's Abstract of Record and Appellee's Brief and Argument.

The evidence taken before the jury is set out both in the record prepared by counsel for the defense and in appellee's Amendment. The defendant abstracted the testimony of three State witnesses, and the testimony of four defense witnesses, and that of the defendant consisting of 14 pages. The State in its amendment to the record abstracts the testimony of five additional witnesses and further testimony of two witnesses whose testimony had been abstracted by the defendant, consisting of seven pages.

Counsel for defendant point out very ably and clearly the matters submitted to the jury and considered by the trial court of which they complain. It is no reflection upon defense counsel to state it is apparent that they abstracted the record in a manner most favorable to their client, in fact it is a commendation on the ability with which defense counsel presented this case. Despite their efforts error does not appear.—Affirmed.

All JUSTICES concur except LARSON, J., dissenting, and MOORE, J., not sitting.

LARSON, J., respectfully dissents: It may be the season of the year, the inadequacy of the record, the apparent confusion surrounding the plea of guilty and the hearing pursuant thereto, or the influence and dominance of a hardened criminal exercised on a physically and mentally disturbed youth, but nevertheless I cannot concur in an affirmance of the death sentence in this case. The majority seem to treat the matter as any other criminal appeal with all assumptions and inferences in favor of regularity in the proceedings. I do not. I feel a far greater degree of care *must* be exercised by the appellate courts in capital offenses involving the supreme penalty than in those that may later be corrected by due legal procedures.

I. Subsequent to defendant's trial before a jury on the charge that he "did, with malice aforethought, while attempting to perpetrate a robbery, kill * * * Alvin E. Koehrsen", the jury, selected from a county where persons suffering from ailments such as those afflicting defendant are treated, disagreed. For some undisclosed reason, two days later he changed his plea to guilty and threw himself upon the mercy of the court. One week later, at a hearing I shall discuss later, it was stipulated that the Judge could again consider the evidence submitted in the previous trial. However, we are not favored with that record and, while this exclusion appears to be overlooked by the majority, I feel we cannot properly pass upon the competency and relevancy of that testimony unless it is shown in the record before us. We cannot fully perform our function as required by section 793.18, Code of Iowa, 1958, by simply considering

the testimony produced at the May 25 hearing. It will not do for us to assume the learned Judge accepted and considered only proper, competent and relevant matters in performing his duty to determine the degree of the crime, in the absence of the full record upon which he acted.

It must be recognized that there were two distinct and different issues to decide, upon which different types of evidence were applicable. The somewhat unlimited evidence properly admissible to determine the punishment to be given must be materially restricted and much eliminated upon the issue of the degree of the crime. Too many vital assumptions are necessary here for us to say without doubt that the defendant had a fair trial and received a just and reasonable sentence.

What was the record in the prior trial? Did the court act properly in overruling all of defendant's objections to testimony received in that trial? The State argues that we should assume those rulings were correct and that only relevant and proper evidence was considered, citing Bowermaster v. Walker, 196 Iowa 30, 33, 194 N.W. 208; Thrasher v. Haynes, 221 Iowa 1137, 1141, 264 N.W. 915; 22A C. J. S., Criminal Law, section 589(1), pages 352–354. I do not find this authority extends so far as to presume the regularity of all court rulings in capital offenses. In fact, our statute provides otherwise. Section 793.18, Code, 1958, provides: "If the appeal is taken by the defendant, the supreme court must examine the record * * *." To me this means the whole record. In State v. Brainard, 25 Iowa 572, 581, we said: "It is made the duty of this court to decide criminal appeals according to the very justice of the case as shown by the record, without regard to technical errors. It does not harmonize with the humane spirit of this statute to lay down the iron rule that the defendant must inevitably and in all cases be visited with the consequences of the omissions or errors of counsel." Also see State v. Martin, 243 Iowa 1323, 1327, 55 N.W.2d 258, 260, 34 A. L. R.2d 904, and citations.

It is, therefore, submitted that although defendant's counsel stipulated that the Judge could consider the evidence and objections before it in the previous trial, we are not performing our statutory duty in this serious matter by assuming the evidence

introduced in the prior trial was proper and would sustain a finding that the degree of this crime was first degree. The very least we should do in this regard is to require a record of those proceedings so we can determine for ourselves whether it alone would justify such a finding.

II. The requirement of section 690.4, Code, 1958, that a defendant charged with murder be given a hearing to determine the degree of the crime cannot be waived even by the defendant himself. When he pleads guilty to the crime of murder, it then becomes the court's duty to hear the evidence, to examine the witnesses, and to consider only competent, relevant and proper testimony in determining the degree. State v. Martin, supra, 243 Iowa 1323, 55 N.W.2d 258, 34 A. L. R.2d 904, and citations. The State does not dispute this rule, and the majority recognize it.

Did the court in this instance comply with that rule, and did it set a hearing for that purpose? The court's record in its "court minutes" of May 18, 1961, leaves me with a feeling of doubt as to just what was meant and what was understood by the parties concerned at that time. It states defendant "* * * now wished to withdraw his plea of not guilty and enter a plea of guilty to the crime of first-degree murder as provided by the 1958 Code of Iowa as amended. Such plea of guilty to the said crime of murder in the first degree was then entered in open court and the court now orders that May the 25th at the hour of ten o'clock A.M. in the Mills County Courthouse *hearing is fixed so that the court may fix the punishment herein as provided by law.*" (Emphasis supplied.)

Two questions of great concern are immediately raised. Was this court action a compliance with the requirements of section 690.4 of the Code, and did it give defendant and his counsel due notice of the time and place of a hearing for determining the degree of his crime? If these questions are answered in the negative, which I think they must be, then defendant's rights were not fully protected and he was not given fair opportunity to prepare for this formal and most important trial issue. This alone would be reversible error.

The majority assume defendant knew the purpose of the

hearing May 25 and contend he was then given every opportunity to present his case on the issue of degree, that he did not object to the hearing, and that he did not offer any further evidence although the opportunity was afforded him. This fact, if it is a fact, cannot cure the error created by a lack of due notice and an opportunity to fully prepare on this issue of degree of guilt. At this hearing it appears defendant's evidence *all* related to mitigation of punishment and his disabilities and weakness. Section 690.5, Code, 1958. Therefore, serious doubts do arise that he was given full opportunity to properly prepare for the issue on degree of the crime. Unless that issue was properly tried, under the Martin case, there was reversible error.

The purpose of the May 25 hearing is further left in doubt by the court's minutes of that date. They stated in part: "Court convened * * * for the purpose of permitting the State of Iowa and the defendant to make showing and introduce evidence * * * for assisting the court in determining the punishment [and then almost as an afterthought] and the degree of murder to be adjudged against the defendant. * * * The court again inquired of the defendant if he * * * understood * * * the import and seriousness of his plea of guilty to the *charge of first-degree murder* * * *." (Emphasis supplied.)

I submit the plea defendant entered was not to first-degree murder but only to murder, and that the court's duty was first to determine the degree of his crime by the examination of witnesses, and thereafter to consider evidence as to the punishment it should inflict upon the accused—not to determine them together, or in the reverse order. The most violent presumption of all is that the court in admitting all the evidence, whether proper or improper, considered only proper evidence to fix degree. If that be the law, our appellate function disappears.

I submit further that the evidence the court may consider in determining the degree is governed by the same rules of evidence applicable to a trial to a jury, and no less. It must be relevant and proper to the issue of degree of guilt. State v. Martin, supra. This brings us to one of the principal issues in this appeal. Was the evidence of a second shooting properly considered, if it was, in determining the degree of the crime

charged herein? Was Vencel's testimony proper for any purpose except in fixing punishment after the issue of degree had been determined?

III. The general rule in such matters is well settled. The State cannot prove or produce evidence that the accused has committed a crime not alleged in the indictment as aiding the proof of his guilt of the crime charged. State v. Porter, 229 Iowa 882, 885, 294 N.W. 898, and citations; State v. Rand, 238 Iowa 250, 25 N.W.2d 800, 170 A. L. R. 289, and citations. The basic reason is that the commission of another crime ordinarily has no proper relevance to the commission of the crime for which defendant is being tried. The proof of an independent crime, entirely different, may incline the mind of the fact finder to the belief that the defendant might also commit the crime with which he is under charge. If there is fair doubt as to its relevance, and if there is possibility of danger of the misuse of that evidence, it should be excluded. State v. Rand, supra.

Here there were timely objections to the testimony of one Kenneth Vencel, who stated he was assaulted by the defendant about twenty minutes after the crime alleged in this indictment. He told a story which, if believed or if proven, would seriously prejudice any trier of fact against the defendant, whether Judge or jury. He said the defendant and one Charles Brown accosted him about 8:30 p.m. and wanted a ride to a beer joint. He refused and Brown pulled a gun and took the driver's seat. Defendant, Kelley, then held a gun on him while Brown drove to a vacant lot. Brown told Kelley he knew what to do, and when Vencel got out of the car Kelley shot him near the heart. When his next shot did not fire, Vencel ran, but he was shot twice more in his attempt to escape. The clearly-intended inference of this testimony is that defendant planned the crime and intended to kill Vencel when the car was stolen. Unless, then, it was properly admissible, it was highly prejudicial.

In a criminal prosecution, proof which tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is generally inadmissible for the purpose of showing the commission of the particular

crime charged. The accused is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the information. It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would likely commit the crime charged in the information or indictment. Evidence of other crimes, of course, compels a defendant to meet charges of which the information or indictment gives no information, confuses him in his defense, and raises a variety of false issues. Kempe v. United States, 8th Cir., 151 F.2d 680; Gart v. United States, 8th Cir., 294 F. 66; Paris v. United States, 8th Cir., 260 F. 529, 531; Fish v. United States, 1st Cir., 215 F. 544; 20 Am. Jur., section 309, page 287.

There are several exceptions to that general rule, and it has been said this branch of evidence law has not yet developed into a set of rigid rules and formulae. 29 Mich. L. Rev. 483. Long ago we classified such exceptions in State v. Vance, 119 Iowa 685, 686, 687, 94 N.W. 204. Also see State v. Crabbe, 200 Iowa 317, 204 N.W. 272, and State v. Porter, supra. It was announced in the Vance case that "The State cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial." Cases were cited as illustrating some of these exceptions applied in this state; not applicable here.

While perhaps much evidence of collateral offenses can be found relevant to the issue of guilt or innocence of an accused, the rule of prohibition was established because of its probable misuse by the finder of fact. The exceptions recognized are those which tend to limit and restrict such misuse and allow little chance for improper inferences.

Thus evidence of a common scheme, plan or design is gen-

erally held admissible. Brickey v. United States, 8th Cir., 123 F.2d 341. This seems to be the exception under which the majority would hold Vencel's testimony proper. I must disagree. There is no evidence that Brown and defendant set out to steal cars, to kill owners of automobiles, or to kill anyone as a purpose. On the other hand, it appears they set out to steal *a* car, that one was stolen, and later when it refused to start, the owner was blamed, shot and killed. That car was then abandoned, and that crime complete. Some twenty minutes later it appears they decided to steal another car, did so, and then apparently decided to suppress the evidence by shooting the owner. I fail to find in these two separate and distinct crimes, although somewhat similar, any showing of a plan, scheme or design, which would permit evidence of the second shooting in the charged offense. It simply is not there, and the only remaining purpose for which the second shooting would be offered would be to show the propensity of the accused to commit such crimes. In other words, the fact that the second assault was committed is used as a basis of predicting that defendant committed the first crime with malice and forethought. Thus, in the absence of a common scheme, plan or design, not present here, that is the only purpose for which this evidence could be used, and that is prohibited under well established rules of evidence. Ladd, Cases and Materials on Evidence, Second Ed., Evidence of Other Crimes, pages 370 to 379 inclusive; Wigmore on Evidence, section 302; Wharton's Criminal Evidence, Volume 1, Eleventh Ed., sections 344, 345, pages 486–491; 20 Am. Jur., Evidence, sections 310, 311, pages 289–292; Uniform Rules of Evidence, rule 55, page 193.

The majority seem to believe that because these separate assaults were committed within a short time, the second shooting was admissible. That position is not sound, for most authorities recognize the element of remoteness as bearing only upon the weight of evidence otherwise admissible, not the competency or propriety of the evidence.

IV. In this record there is nothing to indicate the court did not consider Vencel's testimony for an improper purpose. It is evident that it considered degree of crime and punishment as a combined issue without thought of the limitations of the fact

that the alleged second offense could not be used to determine the degree of guilt. Thus it committed prejudicial error and reversal is required.

In Fish v. United States, supra, 215 F. 544, 549, the court said: "Evidence of this character necessitates the trial of matters collateral to the main issue, is exceedingly prejudicial, is subject to being misused, and should be received, if at all, only in a plain case."

In Paris v. United States, supra, 260 F. 529, 531, it is said: "Such evidence tends to draw the attention * * * away from a consideration of the real issues on trial, * * * and to lead * * * unconsciously to * * * verdicts in accordance with * * * false issues rather than on the true issues on trial."

That issue here is the degree of the crime charged. While little evidence of the proper kind will suffice to prove premeditation in a killing (State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35, and citations), the evidence here of an independent assault tending to show a malicious intent to kill Vencel at another time falls squarely within the prohibition set out above. How does it properly tend to prove such intent at the time of the killing of Koehrsen?

Care should always be exercised in admitting evidence of other and distinct offenses; otherwise, trials and hearings might soon become so involved in collateral matters that the real issue would be lost. Sauvain v. United States, 8th Cir., 31 F.2d 732, 733.

In Wharton's Criminal Evidence, Volume 1, supra, at page 568, it is said as to the exceptions: "In any loose relaxation of the rule, the danger to the accused is that evidence may be adduced of offenses that *he has not yet* been called upon to defend, of which, if fairly tried, he might be able to acquit himself. In the first place, the collateral offense for which an accused has not been tried tends to prove his inclination toward crime, that is, to render more probable his guilt of the charge under trial, which is an absolute violation of the rule." (Emphasis supplied.)

Also see People v. Carvalho, 112 Cal. App.2d 482, 246 P.2d 950, 956; People v. Albertson, 23 Cal.2d 550, 145 P.2d 7, as to the "extreme caution" required in considering evidence of other

offenses, and Douglas v. Commonwealth, 307 Ky. 391, 394, 211 S.W.2d 156, 158, as to resulting prejudice when a "finely intentioned and faithful prosecuting attorney in his zeal goes a little too far in attempting to bring evidence of other crimes which are not necessary at all to the establishment of his case."

In State v. Atkinson, Mo., 293 S.W.2d 941, the court in passing on this question said: "Generally, evidence is not admissible to show that defendant is guilty of the commission of other independent crimes, either as foundation for a separate punishment * * * even though they are of the same nature as the one charged in the indictment." Also see State v. Atkinson, Mo., 285 S.W.2d 563.

This is not the situation where one assaults one person and several others are injured in the fray (People v. Lopez, 135 Cal. 23, 66 P. 965), nor where several were attacked, one killed outright and others were fired upon (People v. Marble, 38 Mich. 117). It was not all one transaction or even another offense committed in an attempt to escape, usually held admissible. It was under no stretch of the imagination an included offense, and there was nothing to show any motive or continuing purpose in the second assault. It was simply a separate and unrelated crime, and under no exception to the rule was the testimony of Vencel proper upon the issue of degree of the crime charged, or to which defendant pleaded guilty. Furthermore, we must assume there was no such evidence introduced in the prior jury trial. If it was not then submitted because it was considered improper, why would it be different when the court was performing the usual jury function of fixing the degree of the crime? Obviously the State felt such evidence before a jury would have been prejudicial error, and I see no difference in this hearing. Who can say a Judge is not vulnerable to such improper evidence and would not be influenced by that evidence? I prefer not to take the chance, with a man's life at stake.

V. As pointed out in the case of State v. Martin, supra, 243 Iowa 1323, 1327, 55 N.W.2d 258, 260, 34 A. L. R.2d 904, it is generally held that in capital cases the appellate courts will disregard technical rules for the purpose of determining whether the defendant had a fair trial. "* * * an exception to the gen-

eral rule that questions not raised in the trial court will not be considered on appeal exists in case of material defects which are apparent on the face of the record and which are fundamental in their character, or which clearly show manifest injustice, especially in capital cases." 24 C. J. S., Criminal Law, section 1669, pages 270, 271.

We further said in the Martin case: "The most solemn duty devolving upon any court is the imposition of the death sentence, in a proper case. No human life should be taken by judicial order until every requirement of statutory law and justice has been complied with. And the more cruel and revolting the crime of which the defendant stands accused, the stronger the popular feeling and public indignation, the more meticulous should the courts be in observing these rules, that no man may be convicted and executed because of the hue and cry raised against him, but only after a trial fair in every respect."

At the very least, the evidence accepted to determine defendant's degree of guilt on May 25 is questionable. Without it we have no full record before us as to the evidence of degree. Without such evidence of the degree of his guilt, under State v. Martin, supra, the cause should be remanded for a full hearing to determine degree.

For all of these reasons a great shadow is cast over these proceedings. Was a hearing as required by statute held to determine the degree of his crime? Section 690.4, Code, 1958. Was the notification given defendant of that hearing adequate when set? Was the evidence taken on May 25 relevant, competent and proper, or was it prejudicial? The benefit of all doubts, I contend, should be given the condemned man by this court, and I am not convinced the majority have done so.

VI. Punishment of an individual should not be determined by the act he committed alone. That is one of the reasons why a broader field of evidence and other humanitarian considerations are rightfully examined in reaching a decision upon punishment in a given case. On the matter of punishment, the youth of a person, his physical and mental capacity, his weakness as a person, his capacity to avoid the domination of others, where such factors are present, and every other factor giving an insight

as to the responsibility of the accused, provide the basis of judgment by the court in pronouncing sentence.

If we were to judge the accused by his acts alone, and first-degree murder had been properly determined as the crime committed, there might be little question that the maximum punishment could be given. But this is not the basis upon which a just determination may be reached. Other factors pertaining to the measure of responsibility must be explored to the fullest in a case involving the death penalty.

Then what is the situation in respect to this defendant? At the May 25 hearing defendant submitted a number of exhibits tending to show his mental and physical disability. These disclosed he had suffered from dizzy spells and blackouts since 1954, that his ailment was diagnosed as epilepsy in 1956, that he was given a medical discharge January 14, 1959, from the Marine Corps due to epilepsy after only 17 days in the service, that he had been found in need of psychiatric treatment at the medical school of the University of Minnesota in February 1960 and that a suggested treatment for his infirmity was Dilantin Sodium, grains 1½ twice a day, and Mebaral, grains 1½ at bedtime. He was further diagnosed as a "sociopathic personality". The evidence showed he was easily led and the inference is clear that at the time of this crime he was under the domination of one Charles Brown, convicted by jury of killing Alvin E. Koehrsen.

It is true, any evidence the court believes may be of aid to it in fixing punishment may be received at the hearing set for that purpose. Section 690.5, Code, 1958. If all the evidence taken on May 25 was considered for that purpose alone, I would find no error, but if such was the case, then under State v. Martin no hearing has yet been had, as the law requires, for the determination of the degree of defendant's guilt, and the hearing on the matter of punishment was premature.

Although we have in the past refused to act to reduce punishment, members of this court have many times pointed out that we do have the authority to do so. State v. Olander, 193 Iowa 1379, 186 N.W. 53, 29 A. L. R. 306; State v. Bruntlett, 240 Iowa 338, 36 N.W.2d 450. Section 793.18, Code, 1958, provides: "If the appeal is taken by the defendant, the supreme court must

examine the record * * * and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, *or reduce the punishment,* but cannot increase it." (Emphasis supplied.) If there ever was an appeal presented to this court where the application of this section was called for, this is it. In no previous case have we been in the position of having to assume that the district court properly considered the evidence, including the objections in a previous trial, in determining the degree of defendant's guilt, where there is no record for us to review as required in section 793.18 of the Code, and where there was an obvious commingling of proper and improper evidence at a hearing set to determine the punishment defendant would receive, and which turned out to be a hearing not only to determine the punishment but also the degree of his guilt.

I need not point out that a trial Judge is human, and that the normal effect of hearing evidence, irrelevant and improper under any standard, would affect his judgment on the issues before him. Under such confusion I submit neither question, as to degree or as to proper punishment, received proper consideration. This youth's attempt to show his physical and mental defects, and their consequences, was lost sight of when the evidence of a subsequent attack and a so-called confession were considered. At any rate I feel, as apparently did the jury in the prior trial, and as did JUDGE BLISS in the Bruntlett case, at page 381 of 240 Iowa, that "Certainly hanging a madman will not deter other madmen from crime, nor perhaps, sane men." Revenge by the State in such a case is unthinkable, and such punishment will never deter such mentally affected persons from acting antisocially.

Due to the fact that great doubts exist as to the degree of this crime on the part of defendant, and as to the admissibility of evidence considered in fixing the degree, I would reduce the sentence to life imprisonment, which would be proper for the protection of the public and could be adjudged either for second-degree or first-degree murder. When a record discloses so many legal doubts, I think it is our duty to reduce the sentence. We

should not pass that obligation to the Governor. A commutation of sentence of such an afflicted person is not probable.

In the alternative I would grant a new trial, and in case defendant continued his plea of guilty to murder, I would order a complete hearing to determine the degree in which only proper, relevant and competent evidence would be considered, and that subsequent to the fixing of the degree, testimony be received to aid the court in rendering judgment and sentence.