STATE OF IOWA, appellee, v. DONALD WAYNE McCOLLOM, appellant.

No. 52388.

(Reported in 151 N.W.2d 519)

JUNE 6, 1967.

Clarence A. Glotfelty, of Davenport, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and David P. Miller, County Attorney, for appellee.

GARFIELD, C. J.—Donald Wayne McCollom was charged by county attorney's information with first-degree murder in killing Richard Lee Jurgensen with a gun, in violation of section 690.2, Code 1962. An attorney with wide experience in criminal mat-

ters was appointed to defend him and did so. A plea of not guilty was first entered but was later changed to a plea of guilty.

Pursuant to Code section 690.4 and State v. Martin, 243 Iowa 1323, 1329, 55 N.W.2d 258, 261, 262, 34 A. L. R.2d 904, the court determined by the examination of witnesses defendant was guilty of murder in the second degree and sentenced him to a term not to exceed 60 years in the men's penitentiary. Defendant attempted to appeal.

■ I. Defendant's notice of appeal is fatally defective in that it is not addressed to the adverse party (the State) or its attorney of record. State v. Fees, 250 Iowa 163, 165, 93 N.W.2d 103, 104, and citations. We have adhered to this decision in dismissing several attempted appeals in criminal cases for failure to so address the notice of appeal.

■ We have also held several times that parties cannot by appearance, consent or waiver confer jurisdiction on this court. Rosmann v. Lawler, 257 Iowa 1292, 1295, 136 N.W.2d 513, 515, and citations.

On these considerations we would be justified in dismissing this appeal. However, in view of the gravity of the offense and severity of the sentence we have, without setting a precedent and as a matter of grace, carefully considered the appeal on its merits and express the opinion that, except for the indefiniteness of the sentence, there is no prejudicial error.

II. We summarize defendant's version of what happened on the night of the killing. On the evening of March 3, 1966, defendant returned to his home in Scott County and saw Jurgensen, husband of his wife's sister, emerge from the bedroom normally occupied by defendant and his wife Pauline and cross the hall to another bedroom. Pauline was clothed only in an open bathrobe. Pressed for an explanation, she told defendant she was going to leave him and Dick (Jurgensen) had arranged to leave his wife. She also said "I am getting a lot better man in bed than you are."

. Defendant said he followed his wife to the kitchen, another argument ensued, he lunged at her and must have stabbed her although he did not remember too much of what went on. He remembered then going to the living room where Jurgensen was

sitting in a chair but said he did not remember shooting him. There is ample evidence that defendant took a gun from his 14-year-old boy, shot and killed Jurgensen.

Defendant then returned to the kitchen to try to help his wife but it was too late. He carried her body to the living room and placed it on the davenport. Defendant then started to lift Jurgensen out of the chair he sat in but the body fell onto the floor. He recalled attempting to commit suicide with an old rifle —not the one used to kill Jurgensen—but it "went off too fast and I missed." Defendant then gave himself up to the sheriff of Muscatine County and was later returned to the Scott County jail.

Some time previous to the fatal night defendant had ordered Jurgensen not to come to his home because he had been unduly familiar with two teen-age McCollom girls. Defendant had also planned to divorce his wife although no action for divorce had been commenced.

Other facts will be referred to later.

III. Defendant first assigns error in the trial court's allegedly conducting the hearing to determine degree of guilt informally.

There is little basis in the record for this assigned error. At the outset of the hearing the State asked that witnesses be excluded from the courtroom except while testifying. The court ruled "It's an informal hearing. The witnesses can be present. I'll overrule that." A little later the court stated "This is a hearing on the facts." Also, "This isn't a very formal hearing" and "This isn't one of these formal hearings before a jury when we watch every bit of evidence that goes in."

The record fairly indicates the court merely expressed the opinion the hearing was less formal than if defendant had pleaded not guilty and trial on the question of guilt and degree of the offense were before the jury. Defendant's counsel made no objection to any of these expressions and indicated agreement with some of them. At one point defendant's counsel told the prosecutor, "Again I'm willing to let the testimony come in in narrative fashion." The court, however, directed that pertinent questions be asked the witness. Most of the court's expressions

now complained of were given as one reason for rulings favorable to defendant.

The record further indicates the court repeatedly advised defendant and his counsel of his right to plead not guilty and, indeed, urged them to do so, not only at the outset but during the course of the hearing. However defendant insisted on letting his plea of guilty stand.

In connection with what has been said, this from State v. Kramer, 252 Iowa 916, 919, 109 N.W.2d 18, 19, 20, is applicable:

"So while the right of a defendant to the services of counsel is firmly fixed, it will not do to say that, being so represented, he is immune from compliance with the rules by which established procedure requires trials must be conducted. The trial court, and the State, are entitled to know what the defendant claims, to what he objects; * * * If, being represented by counsel, he fails to make his position clear, so that the trial court may know his complaints and take care to remedy those which may be well founded, he will ordinarily not be in a strong position to urge error in the appellate court."

Code section 690.4 provides: "Upon the trial of an indictment for murder, the jury, if it finds the defendant guilty, must inquire, and by its verdict ascertain and determine the degree; but if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree, and in either case must * * * pass sentence accordingly."

Thus the statute requires the court upon a plea of guilty to determine the degree by the examination of witnesses. Although our decisions, particularly State v. Martin, supra, and State v. Kelley, 253 Iowa 1314, 115 N.W.2d 184, are not clear on the point, we think the statute implies that such determination be based on competent evidence offered at the hearing. We think, too, the determination here is based on such evidence. The hearing was not informal in the sense that the court considered information not disclosed by competent evidence. It was formal too in the sense that the court ruled on objections and motions as usually done in jury trials.

■ IV. Error is asserted in the admission of hearsay testimony. Doctor Preacher, a pathologist, testified he performed an

autopsy on a body identified to him as Richard Lee Jurgensen and, by stipulation, his report of the autopsy was received in evidence. Defendant's counsel stated he did not stipulate as to identity of the body. The witness was called out of order, with defendant's consent, because of his inability to be present at another time. The State asked that his testimony be received subject to a motion to strike if "not hooked up" as to identity of the body and the court permitted this to be done.

Doctor Perkins, a medical examiner for Scott County, went to defendant's home the night of the tragedy and testified briefly, over defendant's objection as hearsay, to examining the male body identified to him as Richard Lee Jurgensen.

We find no prejudicial error in receiving the testimony of these doctors that the body referred to was identified to them as Jurgensen. Each witness had previously given the identical testimony without objection. The evidence objected to was merely cumulative to that of the same witnesses.

■ It is elementary that admission of evidence is not prejudicial error where substantially the same evidence is in the record without objection. Linge v. Iowa State Highway Comm., 260 Iowa 1226, 1236, 150 N.W.2d 642, 648, and citations.

Further, there is a good deal of other evidence, including some from defendant himself and witnesses offered by him, which points to the fact the male body the two doctors examined was Jurgensen. Defendant admitted he shot and killed Jurgensen and testimony of the doctors added little, if anything, to what was amply shown by other evidence.

Under this record receipt of the doctors' testimony the body was identified to them as Jurgensen must be considered at best a mere technical error or defect which did not affect the substantial rights of defendant or the result. Code section 793.18; State v. Kelley, supra, 253 Iowa 1314, 1318, 115 N.W.2d 184, 186, and citations; State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 642.

■ V. Defendant asserts the court erred in restricting testimony of Doctor Hollander, a psychiatrist, as to defendant's sanity at the time of the killing and refusing to allow him to testify defendant was then insane. It is also said the court re-

stricted the psychiatrist's testimony as to defendant's diminished responsibility. We find no sufficient basis in the record for these assigned errors.

Doctor Hollander interviewed defendant in the jail nine days after the tragedy occurred and testified he went into the facts of the case as they bore on defendant's mental ability; he felt defendant's judgment was impaired so he was unable to use good and proper judgment on the evening in question. In response to a belated objection of the State the court said defendant "can use that. It all goes to the degree of the crime. Go ahead."

The doctor was then asked if he had an opinion as to defendant's mental condition at the time of the offense. When the State objected, the court expressed the opinion that if a defense of insanity at the time of commission of the crime was to be made defendant's plea of guilty should be withdrawn—if he was then insane he was not guilty of any crime. Defendant's counsel agreed insanity at the time the offense was committed would be a complete defense.

Counsel did not press for an answer to his question but then asked the witness if at the time of the offense defendant had full and complete knowledge of his acts. The witness answered that he felt defendant's good judgment was somewhat impaired. Asked whether defendant was aware of the nature of his actions the doctor answered he did not think he was fully aware of the extent of his action.

"Q. Do you think he was capable of premeditation? A. I do not believe there was premeditation.

"Q. Do you think his mind was in such condition he could have had malice aforethought? A. I don't think he had malice aforethought.

"Q. Do you feel he was able to deliberate intelligently? A. I don't think he had the chance or ability to deliberate carefully what he was going to do."

All the State's objections to these questions were overruled.

On cross-examination Doctor Hollander said by "malice aforethought" he understood "ill feelings toward the victims of the crime before it was committed" and "I don't think that was

the case here." Also that he thought there was no deliberation and this was an emotional outburst; his definition of "deliberation" was "planning or deciding what to do intellectually rather than emotionally."

On redirect examination the witness said his opinion this was an emotional outburst was based on the facts defendant reported to him on where and how he found his wife and brother-in-law.

There was no offer of proof and nothing in the record supports the claim the doctor would have testified defendant was insane at the time of the killing. Every question of defendant's counsel was answered except whether he had an opinion as to defendant's mental condition at the time of the offense. That question must be considered withdrawn and superseded by several questions above referred to as to defendant's knowledge of his acts, capability of premeditation, deliberation and malice aforethought, all of which bear on his mental condition. Nor did the court restrict the psychiatrist's testimony as to defendant's diminished responsibility.

Further, the court had overruled the State's objection to this very similar question to the same witness, "Q. Do you have an opinion as to defendant's mental capacities on the evening of March 3?" and he had answered "Yes I do." Defendant could therefore not have been prejudiced by lack of an answer to the one unanswered question. Cardamon v. Iowa Lutheran Hospital, 256 Iowa 506, 513, 128 N.W.2d 226, 231; State v. Sedig, 235 Iowa 609, 616, 16 N.W.2d 247, 251, and citations; 5 Am. Jur.2d, Appeal and Error, section 806; 5A C. J. S., Appeal and Error, sections 1749, 1753, pages 1092, 1102.

If it were true the court refused to let the psychiatrist testify whether he had an opinion as to defendant's mental condition at the time of the offense and the witness was thereby prevented from expressing an opinion defendant was then insane, an offer of such proof should have been made. The general rule is that failure to offer proof of excluded testimony leaves nothing for review unless, upon the whole record, this is apparent. As before indicated, we think it is not apparent here. State v. Hall, 259 Iowa 147, 159, 143 N.W.2d 318, 324, 325, and citations; 4

Am. Jur.2d, Appeal and Error, section 518; 4 C. J. S., Appeal and Error, section 291b(1), page 895 et seq.

VI. It is said the court erred in proceeding with the hearing after evidence indicated question as to defendant's sanity.

It is also asserted the court erred in not ruling defendant was insane at the time of the killing because, it is said, as a result of mental disease or defect, he lacked capacity to appreciate his conduct was wrongful or conform it to requirements of the law.

The first of these assignments seems to claim the court violated Code section 783.1 which provides: "Doubt as to sanity—procedure. If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question."

There is no evidence defendant was insane at the time of the hearing and no claim to the contrary is made. The argument is that Doctor Hollander's testimony, all summarized in the preceding Division V, shows defendant was insane at the time the offense was committed, such insanity is presumed to continue until the hearing was held and required the court to suspend it and order trial upon the question of insanity.

There is certainly no evidence defendant was insane at the time of the offense by the test which has long prevailed in Iowa—mental illness which destroys defendant's power rationally to comprehend the nature or consequences of the act charged against him. So we are asked to abandon that test and adopt the rule a defendant is not criminally responsible if he was suffering from mental disease or defect which caused the act charged.

We have several times declined to abandon the test to which we are committed, as recently as State v. Gramenz, 256 Iowa 134, 138, 126 N.W.2d 285, 288, and citations. We think Doctor Hollander's evidence is insufficient basis for a claim of lack of criminal responsibility for defendant's act under the test we are asked to adopt. The doctor did not testify defendant killed Jurgensen as a result of mental disease or mental defect and no other evidence on the matter was offered.

It cannot be claimed, so far as shown, any mental condition of defendant which had causal connection with the killing was more than temporary. There is no hint of any insanity of a permanent or continuing character such that, when once established, is presumed to continue until the contrary is shown. 22A C. J. S., Criminal Law, section 584, pages 347, 348. See also State v. Hodge, 252 Iowa 449, 465–470, 105 N.W.2d 613, 621–625.

There are other reasons why these assigned errors cannot be sustained. The mental capacity to which section 783.1, supra, refers is at some stage of the trial. It may be conceded, without so deciding, that the hearing on the degree of guilt was a stage of the trial. The test of insanity under this section is defendant's mental capacity to appreciate the charge against him, understand the proceedings and conduct his defense. State v. Bruntlett, 240 Iowa 338, 350, 354, 36 N.W.2d 450, 457–459, and citations.

There is no basis for a finding of reasonable doubt as to defendant's sanity, in the sense just referred to, at the time of the hearing. Neither defendant nor his counsel made such a claim to the trial court and evidently did not desire to do so. Defendant testified fully and intelligently as to what occurred on the fatal night although he professed a loss of memory as to just what happened at the precise time his wife and Jurgensen were killed. He did remember details of his attempted suicide shortly after he carried his wife's body to the living room. Defendant and his counsel seem to have concluded it was wise not to request a separate trial under 783.1 but rather to try for a bench parole which was denied.

The trial court observed defendant when his plea of guilty was entered, throughout the hearing and when sentence was pronounced. It is evident he felt nothing was shown to raise a reasonable doubt as to defendant's then sanity. Determination of whether there was such doubt rested in the court's sound judicial discretion. State v. Hamilton, 247 Iowa 768, 773, 774, 76 N.W.2d 184, 187. We cannot hold this discretion was abused.

Nor, as we have indicated, did the court err in not ruling defendant was insane at the time of the offense.

VII.   Error is assigned in finding defendant guilty of murder in the second degree. It is argued malice aforethought, express or implied, is a necessary ingredient of second-degree murder; the psychiatrist testified he did not think defendant acted with malice aforethought; this testimony, it is said, is undisputed and compelled a finding the degree of the crime was not higher than manslaughter. The argument cannot be accepted.

Of course malice, express or implied, is essential to murder, either first or second degree. Code section 690.1. As defendant concedes, it is well settled that an assault with a deadly weapon implies malice and if death ensues the presumption or inference is warranted that such killing was with malice aforethought. The presumption or inference may be rebutted by evidence to the contrary showing a legal excuse, such as self-defense. State v. McNamara, 252 Iowa 19, 25, 104 N.W.2d 568, 572, and citations; State v. Myers, 248 Iowa 44, 56, 57, 79 N.W.2d 382, 390, and citations; 40 C. J. S., Homicide, section 25; 26 Am. Jur., Homicide, section 305.

"Malice", as used in this connection, means that condition of mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. It does not mean mere spite, hatred or ill will, but does signify a disposition which shows a heart regardless of human life. State v. Rutledge, 243 Iowa 179, 193, 47 N.W.2d 251, 260, and citations; State v. Leedom, 247 Iowa 911, 917, 76 N.W.2d 773, 776, 777.

The trial court was not bound to accept the psychiatrist's opinion as a verity. Vial v. Vial, 369 Mich. 534, 536, 120 N.W.2d 249, 250; People v. Krugman, 377 Mich. 559, 141 N.W.2d 33, 35. Nor was the court compelled to hold the presumption or inference of malice had been rebutted. There is testimony which strengthens the presumption or inference referred to.

There is evidence that shortly before Pauline was stabbed she and defendant were engaged in a loud argument; after both she and Jurgensen were killed defendant said he had murdered his wife and killed Jurgensen; asked why he had killed Jurgensen, defendant replied "That s-o-b. I told that s-o-b to stay away" and said he had ordered deceased to stay away from defendant's

place some days previously. The quoted words we have abbreviated are spelled out in the record. There is evidence defendant showed more compassion for his wife, whom he said he had murdered, than for Jurgensen.

VIII. Defendant's final assigned error is that the sentence of imprisonment for a term not to exceed 60 years is excessive and should be reduced.

The State points out the sentence not to exceed a term of years is too indefinite to be permitted to stand and we should impose a proper sentence. Defendant's reply agrees with this view and gives the claimed excessiveness of the sentence as an added reason why we should impose a proper one.

State v. Jackson, 251 Iowa 537, 546, 101 N.W.2d 731, 736, 737, points out that the indeterminate sentence law, Code section 789.13, is not applicable to murder and sentence for this crime may not be imposed under this statute; such a sentence as imposed here is too indefinite to be permitted to stand; Code section 793.18 gives us the power to impose a proper sentence rather than to remand the case to the trial court for such purpose.

State v. Faught, 254 Iowa 1124, 1134, 1135, 120 N.W.2d 426, 432, and State v. Williams, 255 Iowa 657, 123 N.W.2d 406, cite State v. Jackson with approval. So the duty seems to devolve upon us to impose a proper sentence.

A complaint the punishment fixed in a criminal case is excessive is frequently made to us but we have seldom interfered with it where it is less than the maximum permitted by statute and not, as here, too indefinite. We have pointed out many times the trial court is ordinarily in better position than we to determine what sentence should be imposed. State v. Gramenz, supra, 256 Iowa 134, 144, 145, 126 N.W.2d 285, 291, 292; State v. Kramer, 252 Iowa 916, 921, 922, 109 N.W.2d 18, 21; State v. Rutledge, supra, 243 Iowa 179, 200, 47 N.W.2d 251, 264. Also that we do not have the power to pardon or commute the sentence.

Ordinarily it takes a clear showing of abuse of the trial court's discretion to justify a reduction of even the maximum sentence. State v. Kelley, supra, 253 Iowa 1314, 1325, 115

N.W.2d 184, 190, and citations; State v. Bruntlett, supra, 240 Iowa 338, 347, 36 N.W.2d 450, 455, and citations; State v. Breeding, 220 Iowa 605, 608–610, 262 N.W. 467.

However, these precedents have little application here. We cannot be sure whether the court believed a sentence of 60 years was fair or was merely setting the maximum, with the actual time of confinement to be determined by the board of parole. So we must make our own determination of what is a proper sentence. State v. Jackson, supra, 251 Iowa 537, 549, 101 N.W.2d 731, 738.

Defendant was 37 at the time of the hearing. He served three years in the armed forces and was honorably discharged. He had a good work record of 15 years for the Rock Island arsenal. He was good to his five children. Several witnesses testified to his good character. Apparently defendant had not been in serious trouble before.

However, defendant's crime cannot be condoned. Taking a human life without legal justification is no trivial matter. Nor should we overlook the fact that an important consideration in fixing the punishment for crime is that it may serve as a deterrent to others.

Under all the circumstances we think a sentence of fifty years confinement at hard labor in the State penitentiary at Fort Madison is proper and such is the judgment of this court.

The trial court's judgment that defendant is guilty of murder in the second degree is affirmed. The judgment fixing the sentence is modified as provided in the preceding paragraph. Costs to be taxed to defendant.—Modified and affirmed.

All JUSTICES concur.