**Duane E. BRANT, Plaintiff–Appellee,**

v.

**Crispus C. NIX, Defendant–Appellant.**

**No. 94–2955.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1995.

Decided June 21, 1995.

---

Thomas D. McGrane, Des Moines, IA, argued, for appellant.

Joseph G. Van Winkle, argued, for appellee.

Before LOKEN, Circuit Judge, GODBOLD,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

LOKEN, Circuit Judge.

The State of Iowa appeals the grant of inmate Duane E. Brant's petition for a writ of habeas corpus. The district court granted habeas relief on the ground that Brant's trial counsel provided ineffective assistance in advising Brant to plead guilty to murder. Concluding that counsel's advice fell "within the wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), we reverse.

---

* The HONORABLE JOHN C. GODBOLD, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

## I.

On June 8, 1976, the attendant at a Quik Trip store in Waterloo, Iowa, was shot and killed during a robbery. The Supreme Court of Iowa later described this crime: "[D]efendant Duane E. Brant and one LeRoy Rand, while riding in defendant's car, decided to rob the attendant at a Quik Trip store. Defendant drove to the store, Rand took defendant's shotgun and entered the store to hold up the attendant, Rand shot and killed the attendant in the course of the robbery, defendant panicked and drove away, Rand later rejoined defendant, and the two split about $100 which the robbery netted and also retrieved the shotgun." *State v. Brant,* 268 N.W.2d 210, 211 (Iowa 1978). Both Brant and Rand claimed they were drug- and alcohol-impaired at the time of the crime.

Rand was charged with murdering the store attendant during a robbery. Brant was separately charged with aiding and abetting a felony murder. Both initially pleaded not guilty. Brant's trial began in August 1976, before the disposition of Rand's case. After jury selection, consistent with counsel's advice, Brant pleaded guilty to an "open charge of murder." We will digress briefly to explain this important aspect of Iowa law.

At the time in question, although statutes defined first degree murder, second degree murder, and manslaughter, *see* Iowa Code §§ 690.2, 690.3, 690.10 (1975), "[t]he so-called degrees of this offense [did] not constitute distinct crimes, but [were] gradations of the same crime, devised for the purpose of permitting punishment to be varied according to the circumstances of greater or less enormity characterizing the criminal act." *State v. Nutter,* 248 Iowa 772, 81 N.W.2d 20, 21 (1957). Therefore, a general indictment for murder charged all degrees of the offense, including the lesser-included offense of manslaughter. *See State v. Rand,* 268 N.W.2d 642, 646 (Iowa 1978). If the defendant was convicted of murder after a trial, the jury determined the degree of guilt. "[B]ut if the defendant is convicted upon a plea of guilty, the court must, by the examination of witnesses, determine the degree, and ... pass sentence accordingly." Iowa Code § 690.4 (1975). Under this practice, a defendant

such as Brant would plead guilty to an "open charge of murder," and the court would then conduct an evidentiary "degree-of-guilt hearing." Failure to provide that hearing was reversible error. *See State v. Martin,* 243 Iowa 1323, 55 N.W.2d 258 (1952).

Brant, as an aider and abettor, was subject to the same punishment under Iowa law as the killer, Rand. *See* Iowa Code § 688.1 (1975). When Brant pleaded guilty to an open charge of murder, the prosecution advised that it would ask the court to impose the mandatory sentence for first degree felony murder, "imprisonment for life at hard labor." Iowa Code § 690.2 (1975). At Brant's guilty plea hearing, in order to comply with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and its Iowa counterpart, *State v. Sisco,* 169 N.W.2d 542, 547–48 (Iowa 1969), the trial court was required to have him admit the factual elements of, and acknowledge that he could be punished for, the most severe degree of murder that the court might later determine to be appropriate for penalty purposes. *See, e.g., Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). However, to prevent these expanded guilty plea admissions from prejudicing Brant's subsequent degree-of-guilt determination, Iowa law provided that the degree of guilt must be based on the evidence introduced at the degree-of-guilt hearing, not on the facts admitted at the guilty plea hearing. *See State v. Beverlin,* 263 N.W.2d 535, 538–39 (Iowa 1978).

Consistent with this established practice, Brant acknowledged at his guilty plea hearing that he understood (i) what the State must prove to convict him of first degree felony murder, (ii) that his guilty plea was an admission of "each and every element of that crime," and (iii) that the court would hold a hearing to determine his degree of guilt, following which he could be sentenced to "not less than ten years nor more than life." One week later, the trial court held Brant's degree-of-guilt hearing. Five witnesses testified for the prosecution, including a store patron who witnessed the shooting. Brant and another defense witness testified that Brant was intoxicated from ingesting drugs and alcohol the evening of the crime. The

court did not make an immediate degree-of-guilt ruling.

Rand pleaded guilty to murder on November 12, 1976, before the same trial judge who would determine Brant's degree of guilt. Rand claimed alcohol-diminished responsibility at a lengthy degree-of-guilt hearing held on November 30, 1976. Brant testified at that hearing. On February 2, 1977, the trial court issued separate degree-of-guilt determinations for Brant and Rand, finding both guilty of first degree felony murder and sentencing them to life in prison, the mandatory sentence for that crime.

On direct appeal, the Iowa Supreme Court affirmed Rand's conviction and sentence. *State v. Rand*, 268 N.W.2d 642. However, the court remanded Brant's case for a further degree-of-guilt hearing because the trial court had relied in part on Brant's testimony at Rand's degree-of-guilt hearing, evidence that was outside the record of Brant's conviction. *State v. Brant*, 268 N.W.2d at 212–13. On remand, the trial court again found Brant guilty of first-degree murder and sentenced him to life in prison. Brant appealed, arguing that the trial court had improperly relied on his guilty plea, rather than on the evidence at the degree-of-guilt hearing. The Iowa Supreme Court affirmed, concluding that the trial court "made a specific finding based on overwhelming factual support that Rand *murdered* his victim during the course of a robbery. The crime thus became murder in the first degree." *State v. Brant*, 295 N.W.2d 434, 436–37 (Iowa 1980) (emphasis in original).

Brant next filed a petition for postconviction relief in state court, alleging (among other claims) ineffective assistance of his trial counsel in recommending a plea of guilty. The trial court conducted an evidentiary hearing at which Brant's trial attorney explained his strategy and reasoning in preparing for trial, advising Brant to plead guilty, and conducting the degree-of-guilt hearing. Counsel testified that he advised Brant to plead guilty on the eve of trial because (1) the trial court had refused to exclude confessions by Brant and Rand, (2) the prosecution had located an unfavorable out-of-state witness who would be available to testify, and

(3) counsel believed that a very unfavorable jury had been selected. Based on these factors, counsel concluded that a trial was certain to result in a jury verdict convicting Brant of first degree felony murder and imposing a mandatory sentence of life in prison. On the other hand, a plea of guilty to an open charge of murder would put the degree-of-guilt determination in the hands of the trial judge, who might be more lenient. Following that hearing, the trial court denied relief. The Iowa Court of Appeals affirmed, concluding:

> [Counsel's] evaluation of the evidence against [Brant] coupled with the new developments just prior to trial convinced [counsel] that the best strategy would be for [Brant] to enter a guilty plea in the hope of receiving a more favorable reaction from the judge as to the degree of guilt and sentence imposed. [Counsel's] conclusion as to the desirability of a guilty plea was not beyond the range of competence demanded of attorneys as to constitute ineffective assistance of counsel.

*Brant v. Iowa*, No. 84–372, 384 N.W.2d 2 (Iowa Ct.App. Aug. 29, 1985). The Iowa Supreme Court denied further review. *Brant v. Iowa*, No. 84–372 (Iowa Sept. 26, 1985).

## II.

Brant then filed this petition for a writ of habeas corpus, arguing that ineffective assistance of his trial counsel rendered his guilty plea involuntary. After a brief evidentiary hearing at which Brant and his mother testified as to their dissatisfaction with trial counsel's performance, the district court granted habeas relief on the ground that trial counsel was ineffective in advising Brant to plead guilty to murder, and "but for that advice, [Brant] would have proceeded to trial rather than enter the guilty plea." In concluding that counsel's performance was deficient, the district court reasoned as follows:

—In pleading guilty, Brant admitted all the elements of first degree murder. That crime carries a mandatory sentence of life in prison. Therefore, at the guilty plea hearing, counsel and the trial court "misinformed

[Brant] that it was possible for him to get a [prison] term of not less than ten years."

—Counsel's attempt to show drug-diminished responsibility at Brant's degree-of-guilt hearing was an exercise in futility. Brant had admitted aiding and abetting the robbery, and that was enough to make him guilty of first degree felony murder.

—The only possible defense to first degree murder on these facts would be if *Rand* had alcohol-diminished responsibility when he committed the robbery, and therefore his killing of the store attendant was not murder. However, at Brant's degree-of-guilt hearing, counsel introduced no evidence of Rand's alcohol-diminished responsibility. Thus, counsel's strategy in advising Brant to plead guilty and in preparing for the degree-of-guilt hearing was ineffective. "He either failed to present evidence which potentially could have lessened the degree of guilt [Rand's diminished responsibility], or fruitlessly attempted to lessen the degree of guilt without evidence to support his effort."

## III.

The principal issue on appeal is whether Brant's trial counsel provided ineffective assistance in advising Brant to plead guilty and in conducting the subsequent degree-of-guilt hearing. It is undisputed that Brant likely faced a sentence of life in prison as his trial was about to begin. Both Brant and Rand had confessed, and a store patron would provide an eye witness description of an intentional, senseless killing. Faced with this prospect, counsel testified that he advised Brant to plead guilty to an open charge of murder because a trial seemed certain to produce a jury verdict mandating life in prison, whereas there would be at least a slim chance of a lesser sentence if the trial court determined Brant's degree of guilt. It is clear that these practical considerations are relevant in determining whether counsel's advice to plead guilty was constitutionally reasonable:

"A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might

well suggest the advisability of a guilty plea."

*Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). The question, then, is whether the district court erred in rejecting the state court's assessment of counsel's strategy and reasoning.

The district court concluded that Brant's counsel, in recommending a last-minute guilty plea, doomed Brant to the maximum possible penalty and thus needlessly sacrificed his right to a jury trial, however unfavorably that trial was likely to end. In our view, the court's reasoning ignores critical facts and is premised upon a misconception of the pertinent Iowa law.

*First*, the district court misconstrued Iowa law in concluding that Brant could not receive a term of years sentence after he pleaded guilty to an open charge of murder. As explained above, Iowa law required that Brant admit the elements of, and plead guilty to, the most severe degree of homicide for which he might be sentenced. But for that reason, Iowa law also provided that, in determining Brant's degree of guilt, the trial court must ignore his admissions at the guilty plea hearing and focus on the evidence presented at the degree-of-guilt hearing. *See State v. McCollom*, 260 Iowa 977, 151 N.W.2d 519, 522 (1967); *State v. Martin*, 55 N.W.2d at 262. In rejecting Brant's direct appeal, the Supreme Court of Iowa held that the trial court had obeyed that command. We are bound by this interpretation of state law.

*Second*, the district court similarly erred in concluding that the evidence of Brant's drug-diminished responsibility introduced at his degree-of-guilt hearing was futile. Because Brant's plea of guilty was irrelevant to the degree-of-guilt determination, the trial court could have found that Brant did not have the mental capacity to aid and abet the robbery, at least for purposes of determining his punishment for the ensuing homicide. As the state courts have noted, there was overwhelming evidence that Brant knowingly aided Rand's crime. But on the eve of Brant's trial, all the defense options were "long shots."

*Third*, the district court's criticism of counsel for not presenting evidence of Rand's

diminished responsibility at Brant's degree-of-guilt hearing ignores critical facts. The record reflects that the attorneys for Brant and Rand had cooperated in preparing their respective defenses. Rand was also claiming diminished responsibility, a claim that would be most effectively presented at his own trial or degree-of-guilt hearing.[1] To constitute first degree felony murder under Iowa law, the State had to prove that Rand's killing of the store clerk was murder, that is, involved "malice aforethought, either express or implied." *See* Iowa Code § 690.1 (1975); *State v. Galloway*, 275 N.W.2d 736, 738 (Iowa 1979). If Rand successfully defended this aspect of the charge on the ground that he lacked the mental capacity to murder, so that *his* punishment for the killing was something less than life in prison, the same trial judge might well be unwilling to punish Brant more severely than the killer, Rand.

Viewed from this perspective, a close look at the chronology of events confirms the logic of counsel's guilty plea strategy. If Brant had proceeded to trial in August 1976, the trial court would have been bound by the jury's degree-of-guilt determination—almost certainly, first degree murder. By pleading guilty, Brant placed his degree-of-guilt determination in the hands of the same trial judge who would preside over the disposition of Rand's case. Rand's guilty plea and degree-of-guilt hearing occurred in November. The court issued both degree-of-guilt determinations two months later. Thus, counsel's strategy created an opportunity for Brant to receive the benefit of any leniency that Rand might receive because of diminished responsibility. Of course, the strategy was unsuccessful because Rand did not convince the judge that the killing was something other than first degree felony murder. But counsel's advice was reasonable—the guilty plea afforded Brant his best chance, albeit a slim one, to avoid a mandatory life sentence for aiding and abetting what appeared to be an obvious felony murder. *Compare Ford v. Lockhart*, 904 F.2d 458, 462–63 (8th Cir. 1990).

In evaluating whether counsel's performance was constitutionally acceptable, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. We conclude that counsel's performance in advising Brant to plead guilty and in representing him at the degree-of-guilt hearing met this standard. Therefore, Brant has failed to satisfy the deficient performance prong of *Strickland.* For this reason, we need not reach the State's additional contention that there is no evidence Brant might have prevailed at trial and therefore he failed to satisfy the prejudice prong of *Strickland,* as construed in *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

We have carefully considered Brant's other claims of ineffective assistance of counsel and conclude they are without merit. The judgment of the district court is reversed and the case is remanded with instructions to deny Brant's petition for a writ of habeas corpus.

---

1. Because Brant's degree-of-guilt hearing took place before disposition of Rand's case, as a practical matter, Rand's testimony was not available. Brant could have testified that Rand was intoxicated when he went into the store, but any such testimony was more likely to be credible if presented to corroborate Rand's testimony at Rand's subsequent trial or degree-of-guilt hearing. We note that Brant ultimately testified at Rand's hearing.